Matthias, J.
The primary question involved in this case is whether the structure proposed to be erected by the relator comes within the inhibition of ordinance Number 28932 of the city of Columbus. That ordinance was passed by the council of the city of Columbus on July 19, 1915, and approved by the mayor of the city on July 23, 1915. At that time the relator was maintaining and operating a gasoline and oil filling-station at the location now in question, being a lot at the corner of Twenty-first and Broad streets in sáid city, with a frontage of seventy feet on Broad street and extending to the alley, a depth of about one hundred and eighty-seven feet. For such purpose the relator had theretofore constructed and was then using in the operation of such station a one-story metal building, with underground gasoline tanks having a total capacity of two thousand gallons. It now proposes to erect a new building *411 on the location of the old and provide further facilities, including another driveway, and increase its capacity by the construction of new and larger gasoline tanks and additional pumps. Pursuant to its plans for such improvement, and as an incident thereto, relator had caused the removal of its metal building to .make way for the new structure. But there was at no time an abandonment of its plant or a discontinuance of its business; on the contrary its business was continued, and the contract for the new improvement provided for the uninterrupted continuance thereof. Relator has therefore continuously maintained and operated a gasoline and oil filling-station at that location since about May 1, 1915.
Statutes or ordinances of a penal nature, or which restrain the exercise of any trade or occupation or the conduct of any lawful business, or which impose restrictions upon the use, management, control or alienation of private property, will be strictly construed and their scope cannot be extended to include limitations, not therein clearly prescribed; exemptions from such restrictive provisions are for like reasons liberally construed. 36 Cyc., 1180, and cases cited, and 2 Sutherland on Statutory Construction (2 ed.), Section 356.
The ordinance in question here makes it unlawful to locate, build, construct, erect, maintain or operate any public gasoline or oil filling-station on or within 187½ feet of the curb line of any street in a residence district of the city, or to construct or maintain a driveway from the street over the curb and sidewalk to such station, without first *412 securing the written consent of two-thirds of the owners of property abutting on the street for a distance of 500 feet in each direction from the line of such proposed gasoline or oil filling-station. This is the substance of Section 1 of the ordinance, but Section 3 expressly provides that the ordinance shall not apply to or be operative against any owner or operator of any public gasoline or oil filling-station theretofore erected, unless within thirty days after the taking effect of such ordinance two-thirds of the owners of property within the specified distance file with the city clerk their written protest against the further operation of such station.
There can be no contention that the relator was in any wise precluded from continuing the operation of its plant as constructed and in operation prior to the passage of such ordinance. It is clearly exempt from the provisions of Section 1 by the terms .of Section 3 of the ordinance. It does not appear from the record that within thirty days subsequent to the passage of the ordinance protests were filed against the further operation of the station .of the relator, hence we have not here for consideration the validity of that provision in Section 3.
It is contended 1;y the defendant that the provisions of Section 1 are applicable and preclude the improvements proposed to be made by the relator. Where the lawmaking body declares its own intention in the enactment of a particular law, or defines the sense of the words, employed, it is within the exercise of its legislative power, and its *413 own construction of its language should be followed. (2 Sutherland on Statutory Construction [2 ed.], Section 358.) If there could otherwise be any doubt as to the exemption of a filling-station in operation at the time of the passage of the ordinance from the terms thereof, that doubt is completely dispelled by a fair consideration of the language of Section 3, for the legislative body there construed its own provision and did not leave the interpretation thereof to the courts. The effect of the exemption clause in Section 3 is the same as if Section 1 itself contained the unconditional provision that the requirements thereof should riot apply to or be operative against any owner or operator of a filling-station erected previous to the passage of the ordinance.
For the purpose of an interpretation of Section 1 it is entirely immaterial whether or not the latter part of Section 3 is invalid, as being an unlawful delegation of legislative power. The provision excepting an owner or operator of a filling-station theretofore erected is as clear and explicit as is the provision prohibiting the erection and maintenance of such stations 'without procuring the designated consents. Presumably the prohibition would not have been enacted without the exemption, and the one cannot be enforced and the other disregarded. They must be construed together, and, as we have seen, the clause granting exemption from penal and restrictive provisions must be liberally construed. The presumption obtains that the ordinance is to operate only prospectively; but the legislative body was not content to rest upon that *414 presumption, for by the exemption clause inserted it clearly indicated its plain purpose that the ordinance should have application and operation only prospectively. It prohibits the erection and maintenance of a public gasoline or oil filling-station, but excepts any owner or operator of a station theretofore erected. The relator is the owner of a public gasoline and oil filling-station theretofore erected, and therefore under the very terms of this ordinance may continue the maintenance and operation thereof. Requirements as to the method of construction and maintenance of such buildings and plants are prescribed by other laws and ordinances and admittedly have been met and complied with. It is not a particular kind or class of building or structure that is prohibited or sought to be regulated by this ordinance, but rather the use of the location as a public gasoline or oil filling-station. Here it appears that its character as such had been fixed prior to the passage of this ordinance, which does not in terms declare such places nuisances. They are thereby permitted to exist and continue. The alterations and improvements proposed do not change the character of this station, nor the use thereof, otherwise than to enlarge and somewhat improve it, as the record clearly shows. There is no language in this ordinance requiring' new consents whenever it is desired to alter or enlarge a station erected subsequent to the passage of the ordinance, with the specified consents of property owners, nor prohibiting the making, without procuring such consents, of such alterations and improvements of a station es.tablished *415 and maintained prior to the passage of such ordinance.
The construction of the ordinance contended for by the defendant would preclude the reinstallation of a removed portion of such station and prevent restoration of a building damaged or destroyed by fire or otherwise. If changes or improvements of such station were to be forbidden, presumably language would have been used making such further restrictions. The effect of .language employed in restrictive provisions will not be extended by construction, but the operation of such provisions will be limited by the natural import of the terms employed. Section 1 of this ordinance seems to have been designed expressly to apply only to gasoline or oil filling-stations erected and established after the passage of the ordinance, and when limited, as it is, by the provisions of Section 3, can have no other application.
The judgment of the court of appeals is reversed and judgment rendered for plaintiff in error.

Judgment reversed and' judgment for plaintiff in error.

Nichols, C. J., Jones, Johnson, Donahue, Wanamaker and Robinson, JJ., concur.